1
2
3
4
5
6

### UNITED STATES DISTRICT COURT

### DISTRICT OF NEVADA

7
8
9
10
11
12

MICHAEL A. MCGILBRA,                          )   Case No. 2:12-cv-00794-JCM-CWH
                                              )
                          Plaintiff,          )
                                              )   **FINDINGS AND RECOMMENDATION**
vs.                                           )
                                              )
CAROLYN W. COLVIN, ACTING                     )
COMMISSIONER OF SOCIAL SECURITY,              )
                                              )
                          Defendant.          )
                                              )

13
14
15
16
17
18
19

     This case involves judicial review of administrative action by the Commissioner of Social Security ("Commissioner") denying Plaintiff Michael A. McGilbra's application for a period of disability and disability insurance benefits pursuant to Title II of the Social Security Act. 42 U.S.C. Ch. 7. Before the Court is Plaintiff's Motion for Reversal/Remand (#15)[1], filed on October 5, 2012, and the Commissioner's Opposition (#19), filed on November 27, 2012. This action was referred to the undersigned Magistrate Judge for a report of findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B)-(C)) and Local Rule IB 1-4.

20

### BACKGROUND

21

**I.    Procedural History**

22
23
24

     On April 23, 2009[2], Plaintiff protectively filed an application for a period of disability and disability insurance benefits alleging he became disabled on July 1, 2007. (A.R. 66-68).[3] His claim was denied initially on December 4, 2009 and upon reconsideration on March 15, 2010. (A.R. 27-28,

25
26

     [1] Refers to the Court's docket number.

27
28

     [2] The Administrative Law Judge's decision references a protective filing date of August 19, 2008, which is supported by the date in a Disability Report - Field Office (A.R. 74). Whether the filing date is August 19, 2008 or April 23, 2009 does materially affect the Court's judicial review analysis.

     [3] A.R. refers to the Administrative Record in this matter. *See* Notice of Manual Filing (#12).

1  55-57, and 59-63).  On April 26, 2011, Plaintiff and his representative appeared for a hearing before

2  Administrative Law Judge ("ALJ") Norman L. Bennett.  (A.R. 446-479).  On May 11, 2011, the ALJ

3  issued an unfavorable decision finding the Plaintiff has not been under a disability, as defined in the

4  Social Security Act, from July 1, 2007 through the date of his decision.  (A.R. 15-26).  The ALJ's

5  decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's

6  request for review on March 15, 2012.  (A.R. 5-8).  On May 11, 2012, Plaintiff timely commenced

7  this action for judicial review pursuant to 42 U.S.C. § 405(g).  *See* Motion/Application for Leave to

8  Proceed *in forma pauperis* (#1).

9      II.    **The ALJ Decision**

10        The ALJ followed the five-step sequential evaluation process set forth at 20 C.F.R. §§

11  404.1520 and 416.920 and issued an unfavorable decision on May 11, 2011.  (A.R. 15-26).  At step

12  one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act

13  through June 30, 2012 and has not engaged in substantial gainful activity since July 1, 2007, the

14  alleged onset date.  (A.R. 20, Findings 1-2).  At step two, the ALJ found that Plaintiff has the

15  following severe impairments: progressive myopic degeneration of right eye that led to right eye

16  blindness in 2008, interstitial lung disease with minimal obstructive lung defect, and depressive

17  disorder.  (A.R. 20, Finding 3).  Additionally, the ALJ found Plaintiff has non-severe impairments of

18  history of hypertension, substance abuse in early remission, and bilateral knee pain/osteoarthritis.

19  (A.R. 20).  At step three, the ALJ found that Plaintiff does not have an impairment or combination of

20  impairments that meet or medically equal one of the listed impairments in 20 C.F.R. Part 404,

21  Subpart P, Appendix 1, and more specifically, Listing 12.04.  (A.R. 20-21, Finding 4).  In doing so,

22  the ALJ found Plaintiff mildly limited in activities of daily living, mildly limited in social

23  functioning, moderately limited in concentration, persistence, and pace, and no episodes of

24  decompensation of extended duration.  (A.R. 21).

25        The ALJ found Plaintiff capable of performing a residual functional capacity for a reduced

26  range of light work with the following non-exertional limitations: occasional postural limitations, no

27  climbing of ladders, ropes, or scaffolds, avoid concentrated exposure to temperature extremes, fumes,

28  dusts, gases, and poor ventilation, avoid workplace hazards, limited to monocular vision and could

1    not perform jobs requiring binocular vision, limited to simple tasks and instructions.  (A.R. 22,

2    Finding 5).  At step four, the ALJ found Plaintiff not capable of performing his past relevant work as

3    a concrete float maker, shuttle bus driver, and cleaner.  (A.R. 24, Finding 6).  The ALJ denied

4    Plaintiff's application at step five in which he found that jobs exist in significant numbers in the

5    national economy that Plaintiff can perform based on his age, education, work experience, and

6    residual functional capacity.  (A.R. 25, Finding 10).  In doing so, the ALJ considered the fact that

7    Plaintiff was 48 years-old on the alleged onset date and 52 years-old as of the date of the decision,

8    with at least a high school education, able to communicate in English, and found transferable skills

9    not material to the determination of disability.  (A.R. 25, Findings 7-9).  The ALJ considered

10    Medical-Vocational Rules 201.21 and 202.14, which direct a finding of not disabled.  (A.R. 25).  He

11    also considered testimony from vocational expert Eric Davis who listed jobs such as usher, security

12    guard, and cashier as examples of jobs that Plaintiff could perform.  *Id.*  Based on all of these

13    findings, the ALJ found Plaintiff not disabled and denied his application for a period of disability and

14    disability insurance benefits.

15    **DISCUSSION**

16    **I.**     **Judicial Standard of Review**

17       The court reviews administrative decisions in social security disability benefits cases under 42

18    U.S.C. § 405(g).  *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).  Section 405(g) states,

19    "Any individual, after any final decision of the Commissioner of Social Security made after a hearing

20    to which he was a party, irrespective of the amount in controversy, may obtain a review of such

21    decision by a civil action . . . brought in the district court of the United States for the judicial district

22    in which the plaintiff resides."  The court may enter, "upon the pleadings and transcripts of the

23    record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social

24    Security, with or without remanding the cause for a rehearing."  *Id.*  The Ninth Circuit reviews a

25    decision of a District Court affirming, modifying or reversing a decision of the Commissioner *de*

26    *novo*.  *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2003).

27       The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42

28    U.S.C. § 405(g); see also *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005).  However, the

3

1   Commissioner's findings may be set aside if they are based on legal error or not supported by

2   substantial evidence. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *see*

3   *also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial

4   evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as

5   a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d

6   1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n. 1 (9th Cir. 2005). In

7   determining whether the Commissioner's findings are supported by substantial evidence, the court

8   "must review the administrative record as a whole, weighing both the evidence that supports and the

9   evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720

10   (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

11   Under the substantial evidence test, the Commissioner's findings must be upheld if supported

12   by inferences reasonably drawn from the record. *Batson*, 359 F.3d at 1193. When the evidence will

13   support more than one rational interpretation, the court must defer to the Commissioner's

14   interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see also Flaten v. Sec'y of*

15   *Health and Human Serv.,* 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue before the

16   court is not whether the Commissioner could reasonably have reached a different conclusion, but

17   whether the final decision is supported by substantial evidence.

18   It is incumbent on the ALJ to make specific findings so that the court does not speculate as to

19   the basis of the findings when determining if the Commissioner's decision is supported by substantial

20   evidence. Mere cursory findings of fact without explicit statements as to what portions of the

21   evidence were accepted or rejected are not sufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th

22   Cir. 1981). The ALJ's findings "should be as comprehensive and analytical as feasible, and where

23   appropriate, should include a statement of subordinate factual foundations on which the ultimate

24   factual conclusions are based." *Id.*

25   **II.    Disability Evaluation Process**

26   The individual seeking disability benefits has the initial burden of proving disability. *Roberts*

27   *v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995), *cert. denied*, 517 U.S. 1122 (1996). To meet this burden,

28   the individual must demonstrate the "inability to engage in any substantial gainful activity by reason

1   of any medically determinable physical or mental impairment which can be expected . . . to last for a

2   continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the

3   individual must provide "specific medical evidence" in support of his claim for disability. 20 C.F.R.

4   § 404.1514. If the individual establishes an inability to perform his prior work, then the burden shifts

5   to the Commissioner to show that the individual can perform other substantial gainful work that

6   exists in the national economy. *Batson*, 157 F.3d at 721.

7       The ALJ follows a five-step sequential evaluation process in determining whether an

8   individual is disabled. *See* 20 C.F.R. § 404.1520; *see also Bowen v. Yuckert*, 482 U.S. 137, 140

9   (1987). If at any step the ALJ determines that he can make a finding of disability or nondisability, a

10  determination will be made and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4);

11  *see also Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). The first step requires the ALJ to determine

12  whether the individual is currently engaging in substantial gainful activity ("SGA"). 20 C.F.R. §

13  404.1520(b). SGA is defined as work activity that is both substantial and gainful; it involves doing

14  significant physical or mental activities usually for pay or profit. 20 C.F.R. § 404.1572(a)-(b). If the

15  individual is currently engaging in SGA, then a finding of not disabled is made. If the individual is

16  not engaging in SGA, then the analysis proceeds to the second step.

17      The second step addresses whether the individual has a medically determinable impairment

18  that is severe or a combination of impairments that significantly limits him from performing basic

19  work activities. 20 C.F.R. § 404.1520(c). An impairment or combination of impairments is not

20  severe when medical and other evidence establish only a slight abnormality or a combination of slight

21  abnormalities that would have no more than a minimal effect on the individual's ability to work. 20

22  C.F.R. § 404.1521; *see also* Social Security Rulings ("SSRs") 85-28, 96-3p, and 96-4p.[4] If the

23  individual does not have a severe medically determinable impairment or combination of impairments,

24  then a finding of not disabled is made. If the individual has a severe medically determinable

25  impairment or combination of impairments, then the analysis proceeds to the third step.

26  _____

27      [4] SSRs constitute SSA's official interpretations of the statute it administers and its regulations.
28  *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. §
    402.35(b)(1). They are entitled to some deference as long as they are consistent with the Social Security
    Act and regulations. *Bray*, 554 F.3d at 1223 (finding ALJ erred in disregarding SSR 82-41).

The third step requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.  If the individual's impairment or combination of impairments meet or equal the criteria of a listing and meet the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made.  20 C.F.R. § 404.1520(h).  If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the ALJ must first determine the individual's residual functional capacity ("RFC").  20 C.F.R. § 404.1520(e).  The RFC is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments.  *See* SSR 96-8p.  In making this finding, the ALJ must consider all the relevant evidence such as, all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  20 C.F.R. § 404.1529; *see also* SSRs 96-4p and 96-7p.  To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.  The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

The fourth step requires the ALJ to determine whether the individual has the RFC to perform his past relevant work ("PRW").  20 C.F.R. § 404.1520(f).  PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years prior to the date that disability must be established.  In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA.  20 C.F.R. § 404.1560(b) and 404.1565.  If the individual has the RFC to perform his past work, then a finding of not disabled is made.  If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to the fifth and last step.

The fifth and final step requires the ALJ to determine whether the individual is able to do any

1  other work considering his residual functional capacity, age, education, and work experience.  20

2  C.F.R. § 404.1520(g).  If he is able to do other work, then a finding of not disabled is made.

3  Although the individual generally continues to have the burden of proving disability at this step, a

4  limited burden of going forward with the evidence shifts to the Commissioner.  The Commissioner is

5  responsible for providing evidence that demonstrates that other work exists in significant numbers in

6  the national economy that the individual can do.  *Yuckert*, 482 U.S. at 141-42.

7       **III.**    **Analysis and Findings**

8       Plaintiff seeks reversal of the ALJ's decision for two reasons.  First, Plaintiff contends that the

9  ALJ's credibility finding is not supported by substantial evidence because it does not properly

10  consider his testimony.  Second, Plaintiff argues that the step five finding is not supported by

11  substantial evidence because the jobs cited by the vocational expert exceed Plaintiff's RFC limitation

12  to monocular work.  In response, the Commissioner contends that the ALJ's credibility and step five

13  findings are supported by substantial evidence and do not warrant remand.

14       **A.**    **Credibility**

15       Plaintiff contends that the ALJ did not properly assess his subjective symptom testimony.  In

16  doing so, Plaintiff alleges that the ALJ failed to provide clear and convincing reasons to find Plaintiff

17  not credible.  He argues that the ALJ merely cited a boilerplate conclusion and discredited Plaintiff's

18  testimony based on objective medical evidence alone.  In contrast, the Commissioner alleges that the

19  ALJ provided valid bases for finding Plaintiff not fully credible in accordance with SSR 96-7p.

20  Specifically, the Commissioner highlights the ALJ's discussion of Plaintiff's activities of daily living,

21  medication, and treatment history.  In addition, the Commissioner notes that Plaintiff's testimony was

22  taken into account in the RFC based on the reduced exertional level, vision, environmental, and

23  mental limitations.  The Commissioner also contends that Plaintiff failed to cite any statements he

24  made that were improperly rejected by the ALJ.

25       An ALJ's assessment of credibility is entitled to "great weight."  *Weetman v. Sullivan*, 877

26  F.2d 20, 22 (9th Cir.1989).  The ALJ is required to engage in a two-step analysis to evaluate

27  credibility: (1) determine whether the individual presented objective medical evidence of an

28  impairment that could reasonably be expected to produce some degree of the pain or other symptoms

1    alleged; and, if so with no evidence of malingering, (2) reject the individual's testimony about the

2    severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection.  *See*

3    *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  To support a finding of less than fully credible,

4    the ALJ is required to point to specific facts in the record that demonstrate that the individual's

5    symptoms are less severe than she claims.  *Id.* at 592.  "Factors that an ALJ may consider in weighing

6    a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between

7    testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek

8    treatment or follow a prescribed course of treatment."  *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir.

9    2007) (internal quotation marks and citations omitted).

10           Despite Plaintiff's allegation to the contrary, the ALJ provided clear and convincing reasons

11   for finding him not fully credible.  First, the ALJ relied on objective medical evidence that supports

12   the assigned RFC rather than Plaintiff's allegations of pain.  Plaintiff argues that the ALJ cannot

13   discredit his testimony based on objective medical evidence alone.  The Court agrees, but notes that

14   the ALJ can consider contrary objective medical evidence in making his credibility determination.

15   Here, the ALJ provided a thorough summary of the medical evidence in which he highlighted specific

16   objective findings that support the assigned RFC.  (A.R. 21-24).  The ALJ credited Plaintiff's

17   testimony regarding his right-eye blindness that causes him to have poor night vision, miss steps, and

18   run into people, found it supported by objective medical evidence, and restricted him from

19   performing occupations that require binocular vision.  (A.R. 23).  With respect to his interstitial lung

20   disease with minimal obstructive lung defect, the ALJ compared Plaintiff's reported symptoms of

21   shortness of breath when climbing stairs and claim that inhalers and a nebulizer have helped with the

22   treatment notes indicating he is doing well without significant breathing complaints and fact that he

23   continued to smoke a pack of cigarettes a day.  He also considered the fact that Plaintiff takes no

24   routine medications, a pulmonary function test revealed minimal lung defects and lung volumes and

25   diffusion capacity were within normal limits, and there was a gap in treatment from November 2008

26   to March 2010.  (A.R. 23).  The ALJ granted Plaintiff the benefit of the doubt and assigned a reduced

27   light RFC with postural and environmental limitations.  *Id.*  Also, with respect to his depressive

28   disorder, the ALJ gave a thorough review of Plaintiff's reported symptoms of anger issues, suicidal

ideation, auditory hallucinations.  He considered the treatment notes that documented alcohol abuse and considered Plaintiff's report that mental health treatment has helped him to learn coping skills and medications have helped to overcome most of the symptoms.  He found Plaintiff's depressive disorder to be stable and controlled on medication and limited him to simple tasks and simple instructions.  (A.R. 21 and 23).  Accordingly, the Courts finds that the ALJ provided a sufficient explanation for finding Plaintiff not credible to the extent his testimony exceeds the RFC.

Further, the ALJ considered the conflict between the Plaintiff's subjective pain complaints and the opinion evidence that supports the assigned RFC.  For example, the ALJ assigned great weight to the consultative psychological examiner's opinion that found Plaintiff capable of simple instructions and tasks and indicated that Plaintiff's depression was stable.  (A.R. 24).  Further, the ALJ assigned great weight to the state agency medical examiner's opinion that Plaintiff's depressive disorder is severe, but warrants B criteria findings of mild, mild, moderate, and no limitations.  The ALJ specifically noted that the objective findings from the consultative psychological examiner's report demonstrates that Plaintiff is stable on medication.  Additionally, the ALJ gave great weight to the state agency medical examiner's opinion that Plaintiff is capable of a reduced light RFC and discounted the consultative medical examiner's opinion that recommended a higher medium level RFC.  (A.R. 24).  Finally, no examining physician opined that Plaintiff is disabled.  *See Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (ALJ properly rejected plaintiff's testimony where no examining physician expressed the opinion that he was totally disabled).  Accordingly, the opinion evidence highlighted by the ALJ supports the assigned reduced light RFC rather than Plaintiff's testimony that he is disabled.

The ALJ did not rely on objective medical evidence and opinion evidence only, but rather, addressed some of the seven factors identified in 20 C.F.R. §§ 404.1529(c).  For example, the ALJ considered the medication used, activities of daily living, and treatment history in accordance with SSR 96-7p.  As discussed above, the ALJ underscored the extent to which the Plaintiff can perform activities of daily living such as, preparing simple meals, doing household chores and cleaning, going to church, and communicating with friends.  The ALJ also discussed the fact that Plaintiff's physical and mental symptoms are mostly controlled with medication, he experiences few side effects, and there are some gaps in treatment.  As a result, Plaintiff's contention that the ALJ provided a

9

boilerplate conclusion with respect to credibility and relied on objective medical evidence alone to discredit Plaintiff's testimony is not well-founded. Therefore, the Court finds that the ALJ's credibility finding complies with SSR 96-7p and is supported by substantial evidence.

### C.    Step Five Finding

Plaintiff contends that the step five finding is not supported by substantial evidence. He argues that he is not capable of performing work as an usher, security guard, and cashier due to the RFC prohibition against jobs requiring binocular vision and limitation to simple tasks and simple instructions. Additionally, Plaintiff contends that although the vocational expert testified that Plaintiff could perform these jobs, his testimony conflicts with the Dictionary of Occupational Title ("DOT") and the ALJ should not have relied on the vocational expert's testimony. *See Massachi v. Astrue*, 486 F.3d 1149, 1152-54 (9th Cir. 2007). In response, the Commissioner argues that the step five finding is supported by vocational expert testimony and no conflict exists between the testimony and the DOT.

The Ninth Circuit has found that the DOT is the rebuttable presumptive authority on job classifications. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). As such, ALJs routinely rely on the DOT "in evaluating whether the claimant is able to perform other work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir.1990) (citations omitted); *see also* 20 C.F.R. § 404.1566(d)(1) (DOT is source of reliable job information). Accordingly, an ALJ may not rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, the reasons therefor. *Massachi*, 486 F.3d at 1152–53. Failure to inquire is a harmless error when there is no apparent conflict or the vocational expert provides sufficient support to justify deviation from the DOT. *Id.* at 1154 n. 19. Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality or inferences drawn from the context of the vocational expert's testimony. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997) (as amended) (citations omitted).

Here, the Court finds that the ALJ erred in not inquiring as to whether the vocational expert's testimony conflicts with the DOT. The ALJ should have asked the vocational expert if his testimony and the RFC limitations to no jobs requiring binocular vision and simple tasks and simple instructions

1    conflicts with the DOT in light of the requirements of SSR 00-4p.  However, the Court finds this

2    error "inconsequential to the ultimate nondisability determination" for several reasons.  *Molina v.*

3    *Astrue*, 674 F.3d 1104, 1115 (9th Cir.2012).  First, the Court finds that although the ALJ did not ask

4    about the vision limitation conflict, the vocational expert testified about its effect on the jobs cited.

5    As a result, the Court can determine, from inferences drawn from the context of the vocational

6    expert's testimony, that no apparent conflict exists for the usher and security guard jobs.  *See Light*,

7    119 F.3d at 793.  At the hearing, the ALJ asked the vocational expert a hypothetical that included

8    Plaintiff's RFC limitation to no jobs requiring binocular vision.  The vocational expert testified that

9    usher, security guard, and cashier jobs could be performed.  The ALJ further questioned the

10   vocational expert as to whether the number of cashier jobs should be reduced due to the

11   environmental limitations in the RFC.  The vocational expert testified that there would be some, but

12   not significant, erosion based on environmental limitations.  Then, Plaintiff's representative

13   questioned the vocational expert about Plaintiff's vision limitation by asking whether the jobs cited,

14   and the usher job specifically, would require depth perception.  The vocational expert responded that

15   he did not think it required "too much" meaning Plaintiff would need to be able see a room to seat

16   someone.  Therefore, the vocational expert was aware of the RFC limitation to no jobs requiring

17   binocular vision in citing the usher, security guard, and cashier jobs.  After being questioned by

18   Plaintiff's representative, the vocational expert did not indicate that the vision limitation would

19   significantly affect or reduce the cited jobs, despite doing so for the ALJ's question about the

20   environmental limitations.  Additionally, the ALJ heard further testimony from Plaintiff that he would

21   have difficulty performing the usher job in a dark room and the cashier job due to difficulty seeing

22   prices.  The ALJ indicated that he would consider Plaintiff's testimony regarding his vision

23   limitations, but would need to review the evidence in the record to see if his contentions were

24   supported.  In the decision, the ALJ did not add any further vision limitations with respect to near

25   acuity, far acuity, depth perception, accommodation, or field of vision.  As a result, the only vision

26   limitation - no jobs requiring binocular vision - was considered by the vocational expert.  Therefore,

27   the Court finds sufficient explanation of the vocational expert's testimony in the hearing transcript to

28   justify the ALJ's reliance on the jobs cited.

         Second, the Court finds no apparent conflict between the usher and security jobs cited by the

vocational expert and their DOT descriptions.  Plaintiff indicates that the DOT describes the usher job as requiring frequent field of vision and the security guard job as requiring occasional depth perception and frequent field of vision.  He argues that the depth perception requirement precludes him from performing the security guard job because he does not have three-dimensional vision. Plaintiff also claims that he cannot perform the usher job because he cannot see left to right while keeping his head in a fixed position.  However, Plaintiff appears to be adding depth perception and field of vision as additional RFC limitations.  The ALJ only assigned an RFC limitation that prohibits jobs requiring binocular vision.  He did not assign any further vision limitation related to specific tasks like, depth perception and field of vision.  Indeed, the Court's review of the DOT description of the usher job, DOT No. 344.677.014, 1991 WL 672865, indicates no requirement for binocular vision.  Similarly, the Court's review of the DOT description of the security guard job, DOT No. 372.667-034, 1991 WL 673100, indicates no requirement for binocular vision.

Further, Plaintiff's motion does not include a claim that the ALJ erred in making the RFC finding because he did not define the limitations of monocular vision.  Even giving Plaintiff the benefit of the doubt that he intended to object to the RFC's lack of specificity as to how monocular vision is defined, Plaintiff failed to cite any objective medical evidence to warrant restrictions for depth perception and field of vision.  In fact, the Court's review of the A.R. results in notations that Plaintiff is mildly restricted in the left eye visual field and is able to read large and small print.  (A.R. 201, 241, and 339).  It cannot be automatically assumed that monocular vision prohibits Plaintiff from performing occasional depth perception or frequently utilizing his field of vision.  *See Alsup v. Astrue*, 2012 WL 3817795 at *8 (D. Or. Sept. 4, 2012) (noting it is more difficult to perceive depth with one eye, but rejecting Plaintiff's claim that the DOT's depth perception requirement conflicts with the no binocular vision RFC limitation).  Therefore, the Court finds no apparent conflict given that the RFC specifies no jobs requiring binocular vision and does not include depth perception or field of vision limitations.  Plaintiff bears the burden of establishing that the alleged error is harmful. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).  The Court finds that Plaintiff failed to prove that the ALJ's alleged error is harmful given that he presented no evidence that a more restrictive RFC with additional vision limitations is justified.

Third, Plaintiff does not contend that he is unable to perform the cashier job due his vision

12

limitation.  However, Plaintiff alleges that there is a conflict between the vocational expert's testimony and the DOT's classification of the cashier job.  He argues that the mental skills required by the DOT's classification of cashier on the general educational development ("GED") scale for reasoning at level 3 conflicts with the RFC limitation to simple tasks and instructions.  However, Plaintiff's citation of the DOT's description of the cashier job is misleading.  The Court's review of the DOT description of the cashier job, DOT No. 211.462-010, 1991 WL 671840, indicates that it is classified as special vocational preparation ("SVP") level 2, which is consistent with the vocational expert's testimony.  SVP 2 correlates with the definition of unskilled work that takes a short demonstration to 1 month to learn how to do.  This classification of the cashier job does not obviously conflict with the RFC limitation to simple tasks and instructions.  In addition to providing a SVP classification, the DOT also provides a GED reasoning level classification.  The Court finds that Plaintiff's focus on the GED reasoning level portion of the DOT description to the exclusion of the SVP level to be deceptive.  Plaintiff provided no authority that states that reasoning level is synonymous with the terminology used for RFC limitations.  The vocational expert did not testify as to the reasoning level required by the cashier job, but did testify that the unskilled cashier job is available with the RFC limitation to simple tasks and instructions.  Accordingly, the Court finds no apparent conflict given that the vocational expert testified that the cashier job classified as SVP 2 could be performed with a RFC limitation to simple tasks and instructions.

Nevertheless, the Court notes the Ninth Circuit has not addressed the issue of whether a RFC limitation to simple tasks is compatible with a GED reasoning level 3 job.[5]  Some California district courts have held that a limitation to simple tasks is incompatible with reasoning level 3 jobs and remanded to resolve the conflict.  *See, e.g., O'Quinn v. Colvin*, 2013 WL 6080185 *4 (C.D. Cal. Nov. 18, 2013) (noting the split among circuit courts, lack of Ninth Circuit authority, and trend in California district courts).  The Court finds that it is not warranted to establish a bright-line rule that a

---

[5] The Court notes that there is a split among some Circuit courts regarding this issue.  The Tenth Circuit has found an apparent conflict between a job requiring reasoning level 3 and a RFC limitation to simple tasks.  *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005).  In contrast, the Seventh and Eighth Circuits have found no apparent conflict between a job requiring reasoning level 3 and a RFC limitation to simple work.  *See Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009); *Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007).

RFC limitation to simple tasks conflicts with the DOT's GED reasoning level 3 classification for two reasons. First, this appears to be a semantic debate over how to define simple tasks as compared to reasoning level. The mere fact that different terminology is used cannot be sufficient to create a conflict. The Court's plain reading of simple tasks and simple instructions reveals that it is not obviously in conflict with being able to apply "commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form . . . [and d]eal with problems involving several concrete variables in or from standardized situations." DOT No. 211.462-010, 1991 WL 671840. Additionally, the Court may be able to infer from the A.R. and hearing transcript that Plaintiff is capable of performing the reasoning level 3 job based on his education, past relevant work, and vocational expert testimony. Here, Plaintiff has a high school education, up to semi-skilled past relevant work, and the Court can infer from the hearing transcript questions by Plaintiff's representative and ALJ that the vocational expert considered the mental limitation in citing the cashier job. Even if the Court were to find that reasoning level three is inconsistent with a simple tasks and instructions RFC limitation, and find that an apparent conflict exists, it would not warrant remand. The Court previously found that the usher and security guard jobs are supported by substantial evidence. Accordingly, removing the cashier job from the step five finding does not materially affect the determination of not disabled.

Ultimately, the Court finds that the ALJ committed a harmless error in failing to ask the vocational expert if his testimony conflicts with the DOT. Plaintiff's argument that the failure to make a conflicts inquiry automatically warrants remand is misleading. In fact, the Ninth Circuit has found that such an error is harmless where the alleged conflict is not material and there is no meaningful departure from the DOT as presented by the vocational expert. *See Hill v. Astrue*, 365 Fed.Appx. 808 *810 (9th Cir. Feb. 16, 2010); *see also Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2005). Here, the Court finds no material conflict between the DOT description of the visual requirements of the usher and security guard jobs and the RFC limitation to no binocular vision jobs. Further, the Court finds sufficient explanation by the vocational expert at the hearing to infer that the usher and security guard jobs do not conflict with the vision limitation. Also, the Court finds no material conflict between the DOT description of the mental requirements of the cashier job and the RFC limitation to simple tasks and instructions. Even if the Court found a conflict between

reasoning level 3 and RFC limitation to simple tasks and instructions, remand would not be warranted because the usher and security guard jobs are supported.  As a result, the Court finds that the step five defect in failing to make a conflicts inquiry is a harmless error and the ultimate conclusion of not disabled at step five is supported by substantial evidence.

**IV.    Conclusion**

Judicial review of the Commissioner's decision to deny disability benefits is limited to determining whether the decision is free from legal error and supported by substantial evidence.  It is the ALJ's responsibility to make findings of fact, draw reasonable inferences from the record, and resolve conflicts in the evidence including differences of opinion.  Having reviewed the Administrative Record as a whole and weighed the evidence that supports and detracts from the conclusion, the Court finds that the ALJ's decision is supported by substantial evidence under 42 U.S.C. § 405(g) and does articulate sufficient rationale to satisfy the requisite legal standards.  The Court finds that the credibility and step five findings are supported by substantial evidence and the harmless error at step five does not warrant remand or reversal.

Based on the foregoing and good cause appearing therefore,

**RECOMMENDATION**

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Reversal/Remand (#15) be **denied**.

**IT IS FURTHER RECOMMENDED** that Defendant's Cross-Motion to Affirm (#19) be **granted**.

**NOTICE**

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.,* 708 F.2d 452, 454 (9th Cir. 1983).

15

1

Dated this 29th day of January, 2014.

2

3

4
_____
C.W. Hoffman, Jr.
United States Magistrate Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28